**GERRITY OIL AND GAS CORPORATION, Plaintiff–Appellee,**

v.

**Bob MAGNESS, Defendant–Appellant.**

No. 94CA1319.

Colorado Court of Appeals,
Div. I.

Dec. 21, 1995.

As Modified on Denial of Rehearing
March 7, 1996.

Certiorari Granted Sept. 9, 1996.

Pendleton, Friedberg, Wilson, Hennessey & Meyer, P.C., F. Stephen Collins and Jeffrey R. Fiske, Denver, for Plaintiff–Appellee.

R. Sam Oldenburg, Greeley, and John S. Pfeiffer, Denver, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Bob Magness, appeals the judgment entered, after a trial to the court, denying him relief on his counterclaims against plaintiff, Gerrity Oil and Gas Corporation (Gerrity). We reverse and remand for a new trial.

Magness owned the surface rights to a parcel of land in Weld County. He used his land for raising horses and for related agricultural purposes. The subsurface mineral rights were owned by a third party not involved in this litigation. Gerrity acquired an interest in the mineral rights in June of 1992. One condition of this acquisition was that, if Gerrity did not drill oil wells on the property before December 31, 1992, it was required to pay a penalty and would not be allowed to drill for oil on the property thereafter.

In October of 1992, Gerrity notified Magness of its intent to drill four oil wells on the property. The parties negotiated an arrangement to allow Gerrity to drill its wells on schedule while causing as little disruption to Magness' surface activities as possible. Gerrity started work on the first well on November 11, 1992. It then advised Magness that it would begin work on a second well on November 19, 1992.

At this point, Magness' attorney sent a facsimile letter to Gerrity stating that Gerrity did not have the authority to proceed on any additional wells until it received specific authorization to do so. On November 27, 1992, Gerrity filed an action seeking a temporary restraining order and preliminary injunction to prevent Magness from interfering with further drilling efforts. The trial court issued the temporary restraining order and preliminary injunction.

Gerrity then sought a permanent injunction. Magness filed an answer that included several counterclaims.

Magness' counterclaims dealt primarily with the manner in which Gerrity had conducted the post-drilling cleanup of the surface area. Specifically, Magness alleged that Gerrity had unnecessarily delayed filling several water pits and other holes it had dug during the drilling process. As a result, Magness contended, he was unable to irri-

gate a field and lost a portion of his alfalfa crop. He further alleged that later, when the pits were filled in, some sinking and settling occurred that impeded irrigation on the land.

Magness also presented evidence at trial that Gerrity's agent, rather than removing large pieces of plastic lining material in the pits, had buried the plastic. Further, he presented evidence that Gerrity had failed to remove from the land numerous substances used or unearthed during the drilling process, including: liquid petroleum, bentonite, and other muds brought to the surface.

Magness further alleged that Gerrity had breached a duty owed to him when it failed to consult with him and with the Colorado Soil Conservation Service before beginning the cleanup.

Finally, Magness presented evidence regarding additional improvements that would have to be made to allow irrigation to proceed properly and to repair portions of the property damaged by the drilling and subsequent cleanup efforts.

On April 22, 1994, after a trial to the court, judgment was entered denying Gerrity's request for a permanent injunction and denying Magness relief on each of his counterclaims.

## I.

Magness first contends that the trial court erred in not finding that Gerrity's violations of Colorado Oil and Gas Conservation Commission rules and regulations constituted negligence as a matter of law. We agree that the trial erred in its application of the relevant law.

## A.

The first issue is whether § 34–60–114, C.R.S. (1995 Repl.Vol. 14) provides a private right of action for those injured as a result of the failure of another to comply with certain statutes and regulations relating to the oil and gas industry. We hold that it does.

■ To determine if a private tort remedy is available to a person alleging that a defendant has violated a statutory duty, a court must consider three factors: (1) whether the plaintiff is within the class of persons intended to be benefitted by the legislative enactment; (2) whether the General Assembly intended to create, albeit implicitly, a private right of action; and (3) whether an implied civil remedy would be consistent with the purpose of the legislative scheme. *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992).

Section 34–60–114 provides:

Nothing in this article, and no suit by or against the commission, and no violation charged or asserted against any person under any provisions of this article, or any rule, regulation, or order issued under this article, shall impair, abridge, or delay any cause of action for damages which any person may have or assert against any person violating any provision of this article, or any rule, regulation, or order issued under this article. *Any person so damaged by the violation may sue for and recover such damages as he otherwise may be entitled to receive* .... (emphasis added)

■ Examining § 34–60–114 in light of the *Parfrey* factors, we conclude that the General Assembly did intend to create a private right of action for persons injured as a result of another's violation of the Oil and Gas Conservation Act (the Act), §§ 34–60–101 to 34–60–126, C.R.S. (1995 Repl.Vol. 14), and the regulations promulgated by the Oil and Gas Conservation Commission.

First, we conclude that Magness is within the class of persons whom § 34–60–114 was designed to benefit. The statute includes within its protection any person who is damaged by a violation of a provision of the article or any rule, regulation, or order issued under the article. Here, Magness alleges that he has suffered damages resulting from Gerrity's violation of two rules promulgated by the Commission. Thus, Magness qualifies as being among those whose interests are protected by the statute.

Second, in our view, § 34–60–114 evidences the intent of the General Assembly to create a private right of action. The statute's plain words provide redress to those who are in-

jured through another's violations of the Act and of the rules promulgated thereunder.

Section § 34–60–115 which establishes a limitations period for actions arising under the article, provides further support for this conclusion. It states that: "No action or other proceeding *based upon a violation of this article* or any rule, regulation, or order of the commission shall be commenced or maintained unless it has been commenced within one year from the date of the alleged violation." (emphasis added)

Read together, §§ 34–60–114 and 34–60–115 demonstrate that the General Assembly intended that a legal remedy in damages should be available to those injured by violations of the Act and the regulations promulgated thereunder.

Third, we conclude that a private right of action is in keeping with the purposes of the Act. Section 34–60–102(1) provides a clear statement of these purposes. It states, in relevant part:

> It is declared to be in the public interest to foster, encourage, and promote the development, production, and utilization of the natural resources of oil and gas in the state of Colorado in a manner consistent with protection of public health, safety, and welfare; to protect the public and private interests against the evils of waste in the production and utilization of oil and gas by prohibiting waste. . . .

Further, § 34–60–124 which establishes an environmental response fund, demonstrates the intent of the General Assembly that the negative environmental impact of oil and gas extraction be minimized. It permits the Commission to compel an oil drilling site operator to make environmental reparations. If the operator fails to do so, the statute permits the Commission to undertake cleanup operations and then sue the operator to recover cleanup costs. But, the statute expresses no intent on the part of the General Assembly to make it the exclusive remedy for environmental waste on oil drilling sites.

Thus, § 34–60–114 provides a private right of action for those in Magness' position, *i.e.,* surface owners who have been injured by the alleged failure of an oil drilling site operator to properly remediate the soil after drilling oil wells. *See generally* 1 H. William & C. Meyers, *Oil & Gas Law* § 218.12 (1995); L. Davis, *Selected Problems Regarding Lessee's Rights and Obligations to the Surface Owner,* 8 Rocky Mtn.Min.L.Inst. 315 (1963).

### B.

Magness next argues that the trial court erred in determining that expert testimony was necessary to establish the nature and extent of the duty owed by an oil drilling site operator to the owner of surface rights. We agree.

■ We conclude that the Act and the rules promulgated by the Commission define the relevant duty owed by Gerrity to Magness. Thus, because a breach of that duty did not need to be established by an expert, expert testimony about the standard of care in the oil drilling industry was not necessary. *See Giampapa v. American Family Mutual Insurance Co.,* 919 P.2d 838 (Colo.App. 1995).

Gerrity, as an operator of an oil drilling site, is subject to the Act, as well as to a variety of rules promulgated by the Commission. These statutes and rules define the minimum standards to which Gerrity must adhere in the development of oil drilling sites.

Magness presented evidence that Gerrity had negligently or willfully violated at least two rules promulgated by the Commission. Specifically, Magness attempted to show that Gerrity had violated Oil and Gas Commission Rules 317(q) and 317(r), 2 Code Colo.Reg. 404–1 (repromulgated as Rules 315(q) and 315(r) without modification), and that Magness had relied on the provisions of these rules as the basis of Gerrity's duty.

■ Because the trial court erroneously concluded that expert testimony was required for Magness to demonstrate the nature and scope of the duty owed by Gerrity, and the violation of that duty, we conclude that a new trial is required.

### II.

Magness next argues that the trial court erred in its interpretation of Oil and Gas

Commission Rules No. 317(q) and 317(r). We agree.

 The principles applicable to the interpretation of administrative regulations are essentially the same as those governing the interpretation of statutes. Words and phrases in a regulation are to be given their plain and ordinary meaning. *Regular Route Common Carrier Conference v. Public Utilities Commission,* 761 P.2d 737 (Colo.1988). When a statute or regulation is clear and without ambiguity, a court must enforce it as written and its terms may not be varied or broadened by judicial construction. *Jones v. Cox,* 828 P.2d 218 (Colo.1992)(involving interpretation of a statutory provision).

 The use of the word "shall" in a statute or administrative regulation is presumed to connote a mandatory meaning. *Burns v. Board of Assessment Appeals,* 820 P.2d 1175 (Colo.App.1991). Likewise, the use of negative language in a statute or regulation, such as the phrase "in no event later than," suggests mandatory construction. *DiMarco v. Department of Revenue,* 857 P.2d 1349 (Colo. App.1993).

Rule 317(q) provides, in relevant part:

Final site reclamation and restoration *shall* take place as soon as conditions reasonably permit, following the completion of drilling and completion of operations, or reentry operations, and all the materials and equipment associated with the drilling, reentry or completion operations including, but not limited to, concrete, sack bentonite and other drilling mud additives, sand, plastic, pipe, cable, and other waste materials *shall* be removed.... In addition, material may be burned or buried on the premises *only* with the prior written consent of the surface owner .... (emphasis added)

Rule 317(r) provides, in relevant part:

Interim site maintenance and soil stabilization of drilling locations *shall* take place during operations as conditions permit. Drilling locations *shall* be restored to their original conditions or to the size necessary for a normal producing location insofar as is practicable as soon as site conditions reasonably permit following the completion of drilling and completion operations or reentry operations but *in no event later than* six (6) months after said completion, unless the Director [of the Commission] extends the six (6) month period because of conditions outside the control of the operator.... The operator *shall* notify the surface owner and surface tenant, not less than seven (7) days before any final site reclamation and restoration is to take place and when it is to occur. The party primarily responsible for such reclamation *shall* be the operator, unless the surface owner, by written notification to the Director, assumes such primary responsibility.... The party responsible for such reclamation *shall* consult with the local district of the state soil conservation service, the surface owner ... with respect to the proposed reclamation operations including any special aspects thereof. (emphasis added)

Here, the trial court applied only the first part of Rule 317(q), and concluded that Gerrity had not violated the Rule. It then interpreted Rule 317(r) as follows:

This is very general language, can't be interpreted literally. The Court finds that it doesn't require literal compliance. And here again, you have to have proof of damages if there was a violation. The Court concludes that it's referring primarily to the site location....

Despite their breadth, Rules 317(q) and 317(r) are clear and unambiguous. They provide standards that an operator of an oil drilling site must meet both during and after the drilling process, and they define the scope of the operator's duty to the owner of the surface rights. Because they are unambiguous, the words and phrases in the rules must be accorded their plain and ordinary meaning.

 Furthermore, these rules are couched in mandatory language. It is inconsistent with the plain meaning of these rules to construe them not to require "literal compliance." Likewise, it is inconsistent with the mandatory phrasing of the rules to apply some clauses of the rules, while not applying others. Thus, because the trial court erred

by interpreting these rules in a permissive sense and in not giving effect to all of their provisions and clauses, a new trial is also required on that basis.

### III.

Magness next argues that the trial court erred in its interpretation of the law pertaining to trespass. We agree.

Generally, a trespass occurs when a person physically intrudes upon the property of another without the permission of the person lawfully entitled to the possession of the property. *Burt v. Beautiful Savior Lutheran Church*, 809 P.2d 1064 (Colo.App. 1990). However, a trespass may also occur when one who enters onto property with permission remains longer than is necessary to perform the conduct for which the permission was granted. *See Walker v. City of Denver*, 720 P.2d 619 (Colo.App.1986).

Liability for trespass requires only a showing that the trespasser intended to perform the conduct that in itself constitutes, or inevitably causes, the intrusion. Thus, a *prima facie* case of trespass does not require a demonstration that the alleged trespasser was negligent in his or her conduct. *Burt v. Beautiful Savior Lutheran Church, supra.*

Here, the trial court found that Magness' trespass claim was "basically predicated upon the claim that ... [Gerrity] was *unreasonable* in its method of operation when drilling and reclaiming and operating the oil wells in question." (emphasis added) Therefore, the court denied Magness relief on this claim.

The trial court's reference to the "unreasonableness" of Gerrity's conduct as the touchstone for Magness' claim suggests that the court viewed the tort as one sounding primarily in negligence. However, this conclusion is inconsistent with Colorado law, which separates the tort of trespass from that of negligence. *See Burt v. Beautiful Savior Lutheran Church, supra.* Thus, the reasonableness of Gerrity's conduct is irrelevant to this claim. *See* R. Denney, J. Tade, & C. Thomas, *Contamination from Oil and Gas Production: Who Pays for Cleanup?*, 36 Rocky Mtn.Min.L.Inst. 6–1 (1990)(the doc-trine of trespass provides a remedy to aggrieved surface owners without regard to the negligence of the oil drilling site operator).

### IV.

Finally, Magness contends that the trial court erred in determining that he suffered no damages as a result of Gerrity's conduct. Because the trial court's conclusions regarding damages were inextricably related to its findings on the issue of liability, and because we disagree with the legal basis on which the trial court premised its findings concerning the issue of liability, we conclude that a new trial must be granted on all issues. *See Bassett v. O'Dell*, 30 Colo.App. 215, 491 P.2d 604 (1971), *aff'd*, 178 Colo. 425, 498 P.2d 1134 (1972)(when issues of damages and of liability are closely intertwined, it would be error to confine a new trial solely to the liability issue).

In light of this disposition, we need not address Magness' remaining contentions of error.

The judgment is reversed and the cause is remanded for a new trial.

CRISWELL and ROTHENBERG, JJ., concur.