GERRITY OIL & GAS CORPORATION,
Petitioner,

v.

Bob MAGNESS, Respondent.

No. 96SC215.

Supreme Court of Colorado,
En Banc.

Sept. 15, 1997.

As Modified on Denial of Rehearing
Oct. 20, 1997.

916

918

Pendleton, Friedberg, Wilson, & Hennessey, P.C., F. Stephen Collins, Jeffrey R. Fiske, Denver, for Petitioner.

Witwer, Oldenburg, Barry & Bedingfield, L.L.P., R. Sam Oldenburg, Greeley, Fairfield and Woods, P.C., John S. Pfeiffer, Denver, for Respondent.

Welborn, Sullivan, Meck & Tooley, P.C., Scott L. Sells, Denver, for Amicus Curiae the Colorado Oil and Gas Association.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Gerrity Oil & Gas Corp. v. Magness*, 923 P.2d 261 (Colo.App. 1995). The court of appeals reversed the judgment of the trial court, which had dismissed Magness's counterclaims, and remanded the case to the trial court for a new trial on issues of both liability and damages. *Gerrity*, 923 P.2d at 266. The court of appeals held that section 34–60–114, 14 C.R.S. (1995), creates a private cause of action for individuals injured by another's violation of the Oil and Gas Conservation Act (the Act), §§ 34–60–101 to 34–60–126, 14 C.R.S. (1995), or regulations (rules or commission rules) promulgated by the Oil and Gas Conservation Commission (commission). *Id.* at 263–64. The court of appeals also held that the trial court erred in construing Magness's trespass claim as requiring a showing that Gerrity acted unreasonably in conducting its operations. *Id.* at 266. The court of appeals further held that because the Act and commission rules defined "the relevant duty owed by Gerrity to Magness," the trial court erred in finding that Magness could not prevail in his counterclaims without presenting the testimony of an expert in the oil and gas industry. *Id.* at 264.

We determine that section 34–60–114 does not create a private cause of action for those damaged by another's violation of the Act or commission rule. We further conclude that, although negligence and trespass are distinct and separate causes of action, the reasonableness of an operator's surface use must be considered in determining if the operator committed a trespass.

 We also hold that the determination of whether a surface owner must present testimony of an expert in the oil and gas industry requires the trial court to first identify the cause of action alleged by the surface owner. If the surface owner asserts a claim of negligence, expert testimony must be presented whenever the applicable standard of

care is outside the common knowledge and experience of ordinary persons. If the surface owner relies on a statute or commission rule—which we conclude do not establish the standard of care but are evidence of that standard—expert testimony is still a requirement when the statute or rule itself includes a standard of care that is outside the common knowledge and experience of ordinary persons.

If a surface owner brings a trespass claim for alleged excessive surface use, the surface owner need not present expert testimony in order to have the issue reach the trier of fact. Unlike a negligence cause of action, a prima facie case of trespass does not require evidence of an applicable standard of care, but requires evidence that the operator's surface use materially interfered with surface uses. Because such evidence may be presented by lay persons, expert testimony is not necessary to establish a prima facie case of trespass. Once a prima facie case is established, the mineral interest holder may then counter that evidence by a showing of the scope of its surface use privilege and a showing that its operations were within that privilege.

Because we have not previously clarified the distinction between trespass and negligence causes of action in the context of oil and gas operations, a new trial is necessary on the question of Gerrity's liability. In addition, we conclude that a new trial on the damages issue is necessary because the liability and damages issues in this case are not entirely distinct and separable. We therefore reverse in part and affirm in part the judgment of the court of appeals, and affirm the court of appeals grant of a new trial on all issues.

## I.

In 1983, Bob Magness purchased a surface estate encompassing approximately 1,270 acres of land in Weld County, Colorado. Magness began using a portion of the land to raise Arabian horses and Limousin cattle. Magness also conducted farming operations to provide pasture land for the livestock.

Magness acquired the surface estate in fee simple subject to a reservation of the underlying mineral estate. That estate had been severed prior to Magness's acquisition of the surface estate.

In 1970, the owners of the mineral estate, who are not parties to this litigation, executed an oil and gas lease naming T.S. Pace as lessee. Pace later assigned rights acquired under the lease to Pan American Petroleum Corporation, now doing business as Amoco Production Company (Amoco). On June 30, 1992, Amoco and Gerrity Oil and Gas Corporation (Gerrity) signed an agreement which made Gerrity the lessee of record under the lease.

In October, 1992, Gerrity notified Magness of its intent to drill four oil wells on the parcel. The parties commenced negotiations to determine locations of the wells that would minimize crop damage and disruption of livestock operations. In response to various concerns expressed by Magness's representatives, Gerrity agreed to move the drill sites from their initial proposed locations.

On November 11, 1992, the parties agreed on the location of one of the four wells, the "No. 6" well. The same day, Gerrity began work on this site. However, on November 18, 1992, after Gerrity had expressed a desire to begin work on a second well, the "2–D" well, an agent of Magness informed Gerrity that it did not have authority to commence operations on any additional wells.

By the end of November, negotiations between the parties had broken down and Magness had not consented to Gerrity's entry of the property to drill additional wells. On November 27, 1992, Gerrity filed a motion for a temporary restraining order and preliminary injunction with the District Court of Weld County and requested that the court enjoin Magness from preventing access onto the 2–D well site and order Magness to remove equipment and other materials. The district court granted the motion.

Gerrity later filed a motion to convert the temporary restraining order and preliminary injunction into a permanent injunction.[1] In response to this motion, Magness asserted

---

**1.** By this time, Gerrity had completed all four wells on the Magness property.

several counterclaims, including a request for a declaratory judgment. Magness claimed that Gerrity acted negligently

> by failing to properly and completely restore and remediate the drill sites to a condition as close as practical as existed before [Gerrity's] operation, by leaving drilling mud and other foreign substances in the excavated pits, by failing to timely restore and remediate the drill sites, by depositing hazardous and toxic substances on [Magness's] property, by contaminating the property with hazardous, toxic and controlled substances, and by contaminating [Magness's] property.

Magness also asserted a claim of trespass based on the same alleged acts.

At trial, both parties presented primarily anecdotal testimony from witnesses who observed or took part in the reclamation of the oil well sites. During the course of the trial, Magness alleged that Gerrity violated commission rules by failing to notify and consult with Magness before commencing reclamation operations, failing to reclaim and restore the well sites in a timely fashion following the completion of operations, failing to remove liquids, plastics, and other materials associated with drilling activity, and otherwise neglecting to restore the well sites to their original condition.

In response to these allegations, Gerrity's field operations manager, Thomas Majors, conceded that Gerrity did not notify or consult with Magness before commencing reclamation operations. However, Majors testified that any delay in restoring the well sites was caused by freezing weather conditions which made earlier restoration impossible, and that Gerrity personnel "took everything out that needed to be taken out" of the well sites.

Gerrity also presented the testimony of a heavy equipment operator, Gene Lawson, who performed most of the reclamation work. Lawson testified that he restored the pits on the Magness property according to the same procedure he had been using for forty years. Lawson conceded that it was possible some solid residue remained in the pits after reclamation, but opined that it is generally impossible to remove all residue.

Gerrity also presented the testimony of Cliff Roberts, a civil engineer hired by Gerrity to clean up oil stains adjacent to the No. 3 and No. 4 well sites. Roberts characterized these stains as "benign" and "shallow."

Witnesses for Magness disputed much of the testimony offered by Gerrity. According to these witnesses, Gerrity failed to remove fluids, drilling mud, and plastic liners from the pits, spilled hydrocarbons and other fluids around certain well sites, and generally failed to restore the sites to the condition in which they existed before Gerrity commenced operations. Wendel Geeslin, a ranch manager for Magness, testified that an excavation of one of the reclaimed pits revealed both plastic and drilling mud, and that, in his opinion, weather conditions permitted reclamation of the sites by March 1, 1993. Geeslin further testified that Magness lost one and one half tons of alfalfa near one well site because of delayed and inadequate reclamation, and was delayed in planting a grass crop and utilizing horse pastures due to Gerrity's alleged untimely reclamation efforts. A farm and ranch appraiser, Virgil Holtgrewe, also testified for Magness, and stated that, in his opinion, the Magness property was reduced in value by $17,423 due to Gerrity's oil and gas operations. Holtgrewe arrived at this figure based on his estimation of the cost to restore the property to its previous condition, but conceded that his estimation of damages resulting from Gerrity's operations required him to exercise an unusual degree of personal judgment. Holtgrewe also conceded that the evidence suggested that the presence of the oil and gas wells did not affect the market value of the property.

At the conclusion of the trial, the trial court denied Gerrity's request for a permanent injunction, noting that Gerrity had been on the Magness property for over a year and that there had been "no problems between the parties regarding [Gerrity's] right to reasonable access to the property." The trial court also denied Magness's request for a declaratory judgment, finding that the dispute was essentially factual and not amenable to declaratory judgment.

The trial court also declined to find Gerrity liable on Magness's counterclaims. Generally, the trial court found that Gerrity was "quite conciliatory and acquiesced in many of the suggestions made by [Magness] with respect to the location of the well sites." Addressing Magness's allegations of negligence, the trial court concluded that Magness failed to prove that Gerrity "acted unreasonably in the drilling, restoration, and the operation of the drill sites." In particular, the trial court found that Magness's evidence was insufficient because Magness failed to present expert testimony concerning oil well operations. The court stated:

> The drilling and operation and maintenance of oil wells is not a matter of common knowledge. This Court has next to no knowledge with respect to the drilling, operating of oil wells. There is no testimony of an expert regarding negligent operations of the wells. This is an area that people are not generally familiar with in these cases. For a plaintiff to prevail, a plaintiff must present evidence of a knowledgeable person as to what the practices are in that particular industry or endeavor.

The trial court noted that, although many of Magness's witnesses described what they observed,

> that's not very meaningful to the Court in a lawsuit involving a matter that we don't have, or the average person doesn't have much knowledge regarding. Some of the people involved in this, some of the agents of [Magness], evidenced little knowledge of the area. They describe what they observed, but while this might be somewhat shocking to a sensitive person, it doesn't rise to the level where a Court of law can make a finding that [Gerrity] conducted its operation in an unreasonable or negligent manner under all the facts and circumstances.

The trial court also found that Gerrity had not violated commission rules 315(q) and 315(r). *See* Rule 315(q)-(r), 2 C.C.R. 404–1 (1993).[2] The court found that Gerri-

ty restored the pits in a reasonable length of time because, "under the circumstances, mainly that some of the material excavated from the pits was frozen [and] the pits themselves were frozen," Gerrity's delay was not unreasonable.

The trial court also rejected the contention that Gerrity had violated commission rules by failing to restore the well sites to their original condition insofar as practicable. Specifically, the court noted that there was conflicting testimony as to how the pits were restored, and found that Lawson's testimony was "the most reliable and trustworthy." The court also found that, even if certain rules provisions had been violated, Magness failed to adequately prove any resultant damages.

In resolving Magness's trespass claim, the trial court stated that it was "basically predicated upon the claim that the Plaintiff was unreasonable in its method of operations." Because Magness failed to present the expert testimony needed to show that Gerrity unreasonably operated and reclaimed the well sites, the court determined that Magness did not meet his burden of showing that Gerrity's unreasonable use of the surface constituted a trespass.

The court of appeals reversed the judgment of the trial court and remanded the case for a new trial. *See Gerrity Oil & Gas Corp. v. Magness,* 923 P.2d 261, 266 (Colo. App.1995). The court of appeals determined, first, that section 34–60–114, 14 C.R.S. (1995), "provides a private right of action for those injured as a result of the failure of another to comply with certain statutes and regulations relating to the oil and gas industry." *Id.* at 263. The court also held that the trial court erred in finding that expert testimony was necessary because "the [Oil and Gas Conservation] Act and the rules promulgated by the Commission define the relevant duty owed by Gerrity to Magness." *Id.* at 264.

---

2. The trial court referred to rule 315, although at the time Gerrity restored the sites the pertinent rules provisions were found in rule 317. Because the provisions contain identical language, and to avoid confusion, we refer to rule 315.

The current regulations governing the closure requirements of pits and the reclamation of land affected by oil and gas operations are found at Rules 901–1004, 2 C.C.R. 404–1 (1995—1997).

The court further held that the trial court erred in its interpretation of the requirements of relevant commission rules. *Id.* at 265–66. These rules, the court stated, "provide standards that an operator of an oil drilling site must meet both during and after the drilling process, and they define the scope of the operator's duty to the owner of the surface rights." *Id.* at 265.

The court of appeals also determined that the trial court "erred in its interpretation of the law pertaining to trespass," stating that "the reasonableness of Gerrity's conduct is irrelevant to this claim," and the trial court's reference to reasonableness reflected an erroneous belief that trespass sounds "primarily in negligence." *Id.* at 266. We granted Gerrity's petition for writ of certiorari to review the decision of the court of appeals.[3]

## II.

■ We first consider whether section 34–60–114, 14 C.R.S. (1995), of the Act provides surface owners a private right of action for an oil and gas operator's violation of statutes or commission rules governing the operator's use of the surface. The court of appeals held that section 34–60–114 satisfied the test set forth in *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905 (Colo.1992), and concluded that section 34–60–114 creates a private right of action despite the absence of express language conferring such a right. Although we agree that *Parfrey* sets forth the appropriate test for determining whether section 34–60–114 creates a private right of action for violations of the Act or commission rules, we conclude that neither section 34–60–114 nor

other provisions of the Act evince a legislative intent to create such a private cause of action. We therefore hold that section 34–60–114 does not create a private cause of action for violations of the Act or commission rules.

■ Whenever a claimant alleges that a statute, ordinance, or regulation implicitly creates a private right of action, the critical question is whether the legislature intended such a result. For this reason, we will not infer a private right of action based on a statutory violation unless we discern a clear legislative intent to create such a cause of action. *See Quintano v. Industrial Comm'n,* 178 Colo. 131, 135–36, 495 P.2d 1137, 1139 (1972). When a statute does not expressly provide for a private civil remedy, a court must consider three factors in determining if a particular plaintiff has available a private cause of action based on a violation of the statute:

> whether the plaintiff is within the class of persons intended to be benefitted by the legislative enactment; whether the legislature intended to create, albeit implicitly, a private right of action; and whether an implied civil remedy would be consistent with the purposes of the legislative scheme.

*Allstate Ins. Co. v. Parfrey,* 830 P.2d 905, 911 (Colo.1992).

In *Parfrey,* we were asked to determine whether section 10–4–609(2), 4A C.R.S. (1987),[4] provided an insured under an automobile insurance policy a private cause of action against an insurer based on the insurer's failure to offer increased uninsured/un-

---

**3.** We granted certiorari to consider the following issues:

1. Did the court of appeals err in holding that the reasonableness of an oil and gas operator's conduct is not relevant to a determination of whether such operator's activities constitute a trespass?

2. Did the court of appeals err in holding that expert testimony is neither necessary nor appropriate in order to determine whether an oil and gas operator breached its duty of care owed to the owner of the surface estate when the standard of care set forth in the applicable administrative rule incorporates the concept of reasonableness?

3. Did the court of appeals err in holding that § 34–60–114, 14 C.R.S. (1995), creates a private right of action for an alleged violation of regulations adopted by the Colorado Oil and Gas Conservation Commission?

4. Did the court of appeals err in holding that the district court's conclusion that Magness had suffered no damages as a result of Gerrity's conduct was tainted by the district court's "erroneous" findings on liability?

**4.** That statute provided, in relevant part, that "[p]rior to the time the policy is issued or renewed, the insurer shall offer the named insured the right to obtain higher limits of uninsured motorist coverage...." § 10–4–609(2), 4A C.R.S. (1987); *see* 830 P.2d at 907.

derinsured motorist coverage as statutorily required. Considering the factors outlined above, we concluded that, even though the legislature did not expressly provide for a private civil remedy in enacting section 10–4–609(2), the failure to infer such a private cause of action would thwart the purposes of the statute because it would leave an insured "without a private civil remedy to redress the injuries and damages caused by an insurer's failure to discharge its statutory responsibility." *Id.* at 911. A refusal to infer a private right of action for enforcing section 10–4–609(2) would have frustrated the statute's purposes because neither section 10–4–609(2) nor other relevant statutory provisions provided any "method for enforcing a violation" of the statute. *Id.* at 910 & n. 3. We acknowledged, however, that when the legislature decides to provide for administrative remedies to enforce a statute's provisions, this decision "is consistent with a legislative intent to preclude a private civil remedy for breach of the statutory duty." *Id.* at 910.

In contrast with the statute in *Parfrey,* section 34–60–114 is not "totally silent on the matter of remedy." *Parfrey,* 830 P.2d at 910. Without deciding whether Magness falls within the class of persons intended to be protected by the statute, application of the other two factors set forth in *Parfrey* does not allow us to infer a private cause of action based on a violation of section 34–60–114. Neither the statutory scheme set forth in the Act, nor the language of section 34–60–114 itself, permits such an inference.

█ Like the court of appeals below, Magness relies primarily on the language of section 34–60–114 to argue that the statute creates a private civil remedy. According to Magness, the first sentence of section 34–60–114 creates a private cause of action, while the second sentence merely refers to the type of damages available under the Act. We disagree.

The first two sentences of section 34–60–114 provide:

> Nothing in this article, and no suit by or against the commission, and no violation charged or asserted against any person under this article, shall impair, abridge, or delay any cause of action for damages which any person *may* have or assert against any person violating any provision of this article, or any rule, regulation, or order issued under this article. Any person so damaged by the violation may sue for and recover such damages as he *otherwise may be entitled to receive.*

§ 34–60–114, 14 C.R.S. (1995) (emphasis added). The plain meaning of the first sentence of this section thus preserves a person's right to assert any cause of action for damages the person might have against a person who has violated a commission rule or a provision of the Act. It does not thereby create a private cause of action. The use of the phrase, "any cause of action which a person *may* have or assert," permits no other conclusion. This phrase clearly indicates that a violation of the Act or commission rule does not, standing alone, give rise to a damages remedy. Rather, such a violation only leads to a possibility of a private action for damages.[5] The second sentence reaffirms this point. The use of the term, "otherwise," clarifies that a person may be entitled to receive damages when there is a violation of a commission rule, but that it is not the violation which gives rise to the entitlement. *See Regional Transp. Dist. v. Voss,* 890 P.2d 663, 667 (Colo.1995)("Courts must look primarily to the language of the statute and determine the legislative intent by giving effect to the commonly accepted meaning of the words appearing therein."). Thus, the sentence expressly preserves any preexisting common law remedies for damages a person may have against an operator who has violat-

---

**5.** If the Act provided no remedies for an aggrieved surface owner to enforce its provisions, and the surface owner had no other remedy with which to seek damages, such as a common law action in negligence, trespass or nuisance, the fact that the legislature has expressly preserved a person's right to sue for damages may provide support for the argument that the legislature thereby implicitly intended to create a private cause of action. In a case such as this, however, where an aggrieved surface owner has both common law remedies and remedies under the Act to ensure enforcement of the Act's provisions, we are not persuaded that the legislature intended to create a private cause of action by stating that a plaintiff may "sue for and recover such damages as he *otherwise* may be entitled to receive." § 34–60–114, 14 C.R.S. (1995) (emphasis added).

ed a provision of the Act or a commission rule.

■ Magness's argument also fails because it interprets the first half of section 34–60–114 in isolation from the second half. *See Rodriguez v. Schutt,* 914 P.2d 921, 925 (Colo. 1996) ("[W]e must read and consider the statute 'as a whole in order to give consistent, harmonious, and sensible effect to all of its parts.'") (quoting *Thurman v. Tafoya,* 895 P.2d 1050, 1055 (Colo.1995)). The last two sentences of the statute provide:

> In the event the commission fails to bring suit to enjoin any actual or threatened violation of this article, or of any rule, regulation, or order made under this article, then any person or party in interest adversely affected and who has notified the commission in writing of such violation or threat thereof and has requested the commission to sue, may, to prevent any or further violation, bring suit for that purpose in the district court of any county in which the commission could have brought suit. If, in such suit, the court holds that injunctive relief should be granted, then the commission shall be made a party and shall be substituted for the person who brought the suit, and the injunction shall be issued as if the commission had at all times been the complaining party.

§ 34–60–114, 14 C.R.S. (1995). This language clearly permits a private party to seek injunctive relief, under certain conditions, against a defendant who has allegedly violated, or threatens to violate, provisions of the Act or commission rules. Unlike the statutory language in *Parfrey,* it demonstrates that the legislature considered whether to allow private causes of action in the Act, and chose to allow them only in the form of injunctive relief and only when the commission has received written notice of the violation and a request that it bring suit. *See Board of County Comm'rs v. Moreland,* 764 P.2d 812,

818–19 (Colo.1988) (where remedies other than private damages are specifically provided for in a statute, "[t]his reflects that the state legislature ... gave thought to the issue of civil liability but made no provision for imposition of such liability...."). When statutory language indicates that the legislature considered the issue of remedies for violations of the statute or regulations issued thereunder, and chose not to include a private remedy in damages, we will not infer such a remedy. *See id.* at 819.[6]

■ We recognize that the purposes of the Act are to encourage the production of oil and gas in a manner that protects public health and safety and prevents waste. *See* § 34–60–102(1), 14 C.R.S. (1995); *Gerrity,* 923 P.2d at 264. Our refusal to infer a private cause of action for violations of the Act does not frustrate these purposes. The legislature has enacted a panoply of remedies to insure that oil and gas production in Colorado does not occur at the expense of the environment or surface owners. *See, e.g.,* § 34–60–106(3.5), 14 C.R.S. (1995) (requiring oil and gas lessees to furnish reasonable security to protect surface owners from unreasonable crop losses or damage); § 34–60–109, 14 C.R.S. (1995) (empowering commission to seek injunctive relief against violators of the Act or rules who disregard cease and desist orders); § 34–60–121, 14 C.R.S. (1995) (providing for imposition of monetary penalties against violators and empowering commission to hold administrative hearings, issue cease and desist orders, and revoke and deny permits for the drilling of oil and gas); § 34–60–124, 14 C.R.S. (1995) (creating an oil and gas environmental response fund); *see also Voss v. Lundvall Bros., Inc.,* 830 P.2d 1061, 1065 (Colo.1992) ("The Oil and Gas Conservation Act ... vests the commission with the authority to enforce the provisions of the act, to make and enforce rules and orders pursu-

---

**6.** Inferring a private cause of action for damages every time a person violates the Act or rules issued thereunder would also be inconsistent with the clear legislative intent that the commission have primary responsibility for enforcing the Act's provisions. *See, e.g.,* § 34–60–121(1), 14 C.R.S. (1995) (authorizing commission to impose penalties on violators of Act after hearing); § 34–60–121(4), 14 C.R.S. (1995) (authorizing commission to order violator to take corrective action); § 34–60–121(5), 14 C.R.S. (1995) (authorizing commission to issue cease and desist orders, and conduct hearings in connection therewith); § 34–60–109, 14 C.R.S. (1995) (authorizing commission to seek injunctive relief in district court for ongoing or threatened violations).

ant to the act, and to do whatever may reasonably be necessary to carry out the provisions of the act."). In addition, section 34–60–114 makes clear that an aggrieved surface owner may bring a common law action in tort against an operator who has used the surface in an unreasonable manner.[7] Given these express remedies, had the legislature intended to confer on surface owners the private right to sue for damages based on a violation of the Act or commission rule, it would have done so by clear expression. Since the legislature has not indicated such an intent, and has expressly preserved the right to bring a common law action, we decline to infer that the legislature intended to create a private right of action in enacting section 34–60–114. *See Moreland,* 764 P.2d at 818–19 (refusing to infer private cause of action for violations of building code because relevant statute provided other means for their enforcement).

We conclude that the creation of a private cause of action for violations of the Act or commission rules is inconsistent with both the plain language of section 34–60–114 and with other provisions of the Act. We hold that section 34–60–114 does not create a private remedy in damages for violations of the Act or commission rules.

### III.

■ We next consider whether the trial court erred when it found that Magness's trespass claim was "basically predicated upon the claim that [Gerrity] was unreasonable in its method of operations when drilling and reclaiming and operating the oil wells in question." The court of appeals held that the trial court's statement was "inconsistent with Colorado law, which separates the tort of trespass from that of negligence."

*Gerrity,* 923 P.2d at 266. The court of appeals further held that "the reasonableness of Gerrity's conduct is irrelevant" to Magness's trespass claim. *Id.* We agree with the court of appeals that trespass and negligence are two separate and distinct causes of action. We do not agree that the reasonableness of Gerrity's use of the surface is irrelevant in resolving Magness's trespass claim. To the contrary, when a surface owner asserts a claim of trespass based on an operator's alleged excessive surface use, the trier of fact must consider whether the operator's use of the surface was reasonable and necessary.

■ Severed mineral rights lack value unless they can be developed. For this reason, the owner of a severed mineral estate or lessee is privileged to access the surface and "use that portion of the surface estate that is reasonably necessary to develop the severed mineral interest." *Notch Mountain Corp. v. Elliott,* 898 P.2d 550, 556 (Colo.1995); *see also Rocky Mountain Fuel Co. v. Heflin,* 148 Colo. 415, 422, 366 P.2d 577, 580 (1961) (the severed mineral owner's right of access includes the "rights of ingress, egress, exploration, and surface usage as are reasonably necessary to the successful exploitation of [the mineral] interest."). The right to use the surface as is reasonably necessary, known as the rule of reasonable surface use, does not include the right to destroy, interfere with or damage the surface owner's correlative rights to the surface. *See Colorado Fuel & Iron Corp. v. Salardino,* 125 Colo. 516, 522, 245 P.2d 461, 464 (1952), *overruled on other grounds, Gladin v. Von Engeln,* 195 Colo. 88, 575 P.2d 418 (1978).

■ In the absence of statutes, regulations, or lease provisions to the contrary,

---

**7.** Given that the Act permits both private individuals and the commission to institute actions and proceedings under certain specified conditions, the enactment of section 34–60–115, 14 C.R.S. (1995), does not persuade us that the legislature intended to create a private right of action in damages for violation of the Act or commission rules. Section 34–60–115 imposes a one year deadline for commencing an "action or other proceeding based upon a violation of this article or any other rule, regulation, or order of the commission." § 34–60–115, 14 C.R.S. (1995).

Because the Act expressly provides for actions and proceedings that may be instituted by the commission and private parties for violations of the Act and commission rules, section 34–60–115 is not rendered meaningless by a failure to infer a private cause of action. It therefore lends no support to the argument that the legislature intended to create a private cause of action in damages for such violations.

unless the conduct of an operator in accessing, exploring, drilling, and using the surface is reasonable and necessary to the development of the mineral interest, the conduct is a trespass. *See Frankfort Oil Co. v. Abrams*, 159 Colo. 535, 545, 413 P.2d 190, 194 (1966). In this sense, the right of access to the mineral estate is in the nature of an implied easement, since it entitles the holder to a limited right to use the land in order to reach and extract the minerals. *See Restatement of Property* § 450 (1944) (defining easement); Howard R. Williams & Charles J. Meyers, *Oil and Gas Law* § 218 (1996) (In the absence of relevant lease provisions, "it has been held that such surface easements are implied as will permit the lessee or mineral owner to enjoy the interest conveyed."). As the owner of property subject to the easement, the surface owner " 'continues to enjoy all the rights and benefits of proprietorship *consistent with the burden of the easement.*' " *Bijou Irrigation Dist. v. Empire Club*, 804 P.2d 175, 183 (Colo.1991) (quoting *Barnard v. Gaumer*, 146 Colo. 409, 412, 361 P.2d 778, 780 (1961)). The surface owner thus continues to enjoy the right to use the entire surface of the land as long as such use does not preclude exercise of the lessee's privilege.[8]

The fact that neither the surface owner nor the severed mineral rights holder has any absolute right to exclude the other from the surface may create tension between competing surface uses. "The broad principle by which these tensions are to be resolved is that each owner must have due regard for the rights of the other in making use of the estate in question." *Grynberg v. City of Northglenn*, 739 P.2d 230, 234 (Colo. 1987). This "due regard" concept requires mineral rights holders to accommodate surface owners to the fullest extent possible consistent with their right to develop the mineral estate. *See Getty Oil Co. v. Jones*, 470 S.W.2d 618, 622 (Tex.1971). How much accommodation is necessary will, of course, vary depending on surface uses and on the alternatives available to the mineral rights holder for exploitation of the underlying mineral estate. However, when the operations of a lessee or other holder of mineral rights would preclude or impair uses by the surface owner, and when reasonable alternatives are available to the lessee, the doctrine of reasonable surface use requires the lessee to adopt an alternative means. *See 6 American Law of Mining* § 200.02[1][b][iii] (Rocky Mountain Mineral Law Foundation ed, 1996).

Because a mineral rights holder is legally privileged to make such use of the surface as is reasonable and necessary to develop underlying minerals, a trespass occurs at the point when the holder exceeds the scope of that implied easement and thereby exceeds the legal authorization permitting mineral development activities. *See Visintainer Sheep Co. v. Centennial Gold Corp.*, 748 P.2d 358, 360 (Colo.App.1987) (because mineral claimant was legally authorized to enter land owned by another to prospect for minerals, its entry and staking of mining claims could not be a trespass); *Restatement (Second) of Torts* § 214(2) (1965) (stating that one privileged to enter land who thereafter commits a tort "is subject to liability only for such tortious act," and not for his original entry); *Thompson on Real Property* § 68.02(b) (David A. Thomas, ed., 1994) ("[O]ne who enters with license, authority, or consent, but who then exceeds the limits of that permission, may commit a trespass."); *see also* Richard J. Denny, Jeanmarie B. Tade & Cynthia J. Thomson, *Contamination from Oil and Gas Production: Who Pays for Cleanup?*, 36 Rocky Mtn. Min. L. Inst. 6–1 at 6–32 (1990) ("Any intentional use of another's real property without authorization *and without a privilege by law to do so* is actionable as a trespass without regard to harm.") (emphasis added). In determining whether the scope of an easement or privilege has been exceeded, a court must look to its nature and purpose. *See Bijou*, 804 P.2d at 183. Be-

8. Although we have referred to the mineral estate as the dominant estate and the surface estate as the servient estate, our cases have consistently emphasized that both estates must exercise their rights in a manner consistent with the other. Hence, in a practical sense, both estates are mutually dominant and mutually servient because each is burdened with the rights of the other. *See* Eugene O. Kuntz, *The Law Relating to Oil and Gas in Wyoming*, 3 Wyo. L.J. 107, 113 (1949).

cause the scope of a mineral rights holder's implied easement is defined in terms of reasonableness and necessity, the reasonableness of the holder's conduct is not only relevant, but is essential to any resolution of a trespass claim. Until it is found that the lessee's conduct was not reasonable and necessary for the exploration or extraction of the minerals, a cause of action for trespass must fail.[9]

Given these principles, the trial court did not err in concluding that a claim of trespass against a lessee based on the lessee's alleged excessive surface use requires the court to consider the reasonableness, as well as the necessity, of the lessee's actions. If a privilege to enter the property of another is defined in terms of reasonableness, trespass may only occur when the holder of the privilege acts unreasonably or unnecessarily. *See Magliocco v. Olson,* 762 P.2d 681, 685 (Colo.App.1987) (where landlord-tenant lease permitted landlord to enter tenant's premises at reasonable times, no trespass could occur without showing that landlord's entry was unreasonable). Or, stated conversely, in its necessary use of the surface the lessee has a responsibility to exercise its privilege reasonably, in a manner designed to minimize intrusion and surface damages. When it fails in such responsibility, it commits a trespass.

Our precedent is consistent with this analysis. In *Grynberg,* we held that the City of Northglenn committed a geophysical trespass after it drilled test holes on land for the purpose of ascertaining whether the land contained commercial deposits of coal. 739 P.2d at 236–37. Although Northglenn had obtained permission from the severed surface owner to conduct the testing, it had failed to obtain permission from either the record owner of the mineral estate, the State of Colorado, or its lessee, Grynberg. *See id.* at

236 n. 5. We held that the permission actually obtained by Northglenn was ineffectual because its exploration activities constituted a trespass against the mineral estate, not the surface estate. *Id.* at 236–37. Consequently, Northglenn's testing was unauthorized because the surface owner could not validly consent to the invasion of a property interest which the surface owner did not hold. *See id.* at 234–35.

Our decision in *Grynberg* thus stands for the broad principle that unauthorized intrusions on the property interests of another may subject the intruder to liability for trespass. In the present case, the rule of reasonable surface use makes clear that Gerrity's conduct is "unauthorized" when it is not reasonable and necessary to the development of its mineral interest. Consequently, *Grynberg* lends no support to the argument that reasonableness is irrelevant in resolving Magness's trespass claim.

In *Walker v. City of Denver,* 720 P.2d 619 (Colo.App.1986), the plaintiff, Walker, filed trespass and conversion claims against Denver for alleged damage done to Walker's bar by city police officers executing a search warrant. According to Walker, the officers "exceeded the boundaries and scope of the warrant" by destroying or removing various fixtures on the premises. *Id.* at 621. After concluding that the officers were neither authorized by statute nor by the search warrant to sever fixtures from the property, the court concluded that the officers were liable as trespassers. *See id.* at 623–24.

The court of appeals in *Walker* thus held that police officers could be liable in trespass at the point when they exceed the scope of the privilege justifying their entry. In *Walker,* the scope of that privilege was defined by statute and by the terms of the search warrant. In the present case, the scope of Gerrity's privilege to use the surface of the land is

9. Although it is true that reasonableness is often irrelevant to a trespass claim, this is only because in the usual case the property rights of the one asserting the trespass claim are limited only by geographical boundaries. However, when a surface owner brings a claim of trespass against a mineral rights holder, the surface owner's right to exclude is limited not by the geographical boundaries of the property owned by the surface owner, but by the lessee's right to do what is reasonable and necessary for the development of the mineral rights. *See Salardino,* 125 Colo. at 522, 245 P.2d at 464 ("[N]either the owner of the surface nor the owner of the subjacent rights can lawfully destroy, interfere or damage the right of the other."). Therefore, a mineral owner or lessee that violates this rule of reasonable surface use commits a trespass.

defined by the rule of reasonable and necessary surface use.

We conclude that an operator's use of the surface is limited to that which is reasonable and necessary to the development of the mineral estate. We therefore hold that the appropriate inquiry on a trespass claim based on an operator's excessive surface use is whether the operator's surface use exceeded that which was reasonable and necessary to access the mineral estate.

## IV.

We next consider the role of expert testimony when a surface owner brings negligence and trespass claims. The trial court found that such claims require the claimant to "present evidence of a knowledgeable person as to what the practices are in that particular industry or endeavor." The trial court therefore refused to find Gerrity liable because Magness presented no expert testimony concerning oil and gas operations. The court of appeals reversed, holding that "the Act and the rules promulgated by the Commission define the relevant duty owed by Gerrity to Magness." *Gerrity*, 923 P.2d at 264. The court of appeals concluded that, because provisions of the Act and commission rules establish the standard of care in determining the reasonableness of an oil and gas operator's conduct, "expert testimony about the standard of care in the oil drilling industry was not necessary." *Id.* Like the trial court, the court of appeals made no distinction between trespass and negligence claims in its expert testimony analysis.

A negligence claim requires proof of a standard of care. Commission rules evidence the standard of care applicable to oil and gas operators' surface use, but do not conclusively establish that standard. As evidence of the applicable standard of care, commission rules that adopt a standard of care which is within the common knowledge and experience of ordinary persons allow the trier of fact to determine the legal duty owed by the operator without the aid of expert testimony. If, however, a commission rule adopts a standard of care which is not within the common knowledge and experience of ordinary persons, expert testimony would be required.

Because some of the rules provisions allegedly violated by Gerrity included standards of care within the common knowledge and experience of ordinary persons, Magness was not required to present testimony of an expert in the oil and gas industry in order to present evidence of the duty owed by Gerrity. Hence, although the court of appeals incorrectly held that expert testimony was not required to prove negligence because the rules define the duty owed by an oil and gas operator, it correctly reversed the trial court judgment requiring Magness to present the testimony of an expert in the oil and gas industry.

A trespass claim does not require evidence of an applicable standard of care, but instead requires evidence, in establishing a prima facie case, that the operator's surface use materially interfered with the surface owner's use of the surface. Because this evidence may be presented by lay witnesses, expert testimony is not required for a surface owner to sustain a claim of trespass.

### A.

In Colorado, a prima facie case of negligence is established when the plaintiff proves the following elements: the existence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a causal relationship between the breach and the injury. *See Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo.1992). Because negligence requires proof of the existence and breach of a legal duty, a negligence claim cannot be sustained without evidence of an applicable standard of care and evidence that the defendant's conduct did not conform to the standard of care. *See United Blood Servs. v. Quintana*, 827 P.2d 509, 519 (Colo. 1992).

Generally, expert testimony is required in negligence cases when the defendant is held to a standard of care that is outside the common knowledge and experience of ordinary persons. *See Quintana*, 827 P.2d at 520. For example, expert testimony

is normally required as evidence of the standard of care in medical malpractice cases because "[w]ithout expert opinion testimony in such cases, the trier of fact would be left with no standard at all against which to evaluate the defendant's conduct." *Id.*

Relevant legislative enactments and administrative regulations may, in some cases, establish the applicable standard of care in negligence actions, while in other cases they may serve only as evidence of that standard.[10] If a legislative enactment or regulation establishes the duty owed by the defendant, expert testimony is irrelevant on that issue unless the enactment or regulation itself includes a standard of care outside the common knowledge and experience of ordinary persons. *See McNeil Pharm. v. Hawkins,* 686 A.2d 567, 583 (D.C.1996) (if statutes and regulations require "expert explication," expert testimony is necessary). If, however, a statute or regulation is merely evidence of the standard of care, expert testimony is admissible as additional evidence of that standard. In deciding if expert testimony is necessary or permissible where a negligence claim against an oil and gas operator is based on a violation of a commission rule, we must determine whether commission rules establish the standard of care applicable to oil and gas operators' surface conduct. If the rules do not establish the standard of care, we must then determine if they are at least evidence of that standard.

A relevant legislative enactment or regulation may define the standard of care owed by a defendant if (1) it was enacted for the public's safety, (2) it was intended to protect the class of persons of which the plaintiff is a member, and (3) it was enacted to prevent the type of harm suffered by the plaintiff. *See Canape v. Petersen,* 897 P.2d 762, 763–64 (Colo.1995). If the legislative enactment or regulation defines the legal duty owed by the defendant, then proof of its violation establishes a breach of that duty.

In *State v. Moldovan,* the plaintiff was injured after his motorcycle struck a cow that had wandered onto a federal aid highway after passing through an inadequately maintained fence. The plaintiff subsequently filed claims against the State of Colorado for negligence and negligence per se based on the state's alleged violation of a statute requiring it to maintain right-of-way fences adjacent to certain public highways.

Considering the plaintiff's negligence per se claim, we determined that there was "no question" that the fence statute was intended to protect the safety of highway users, that the plaintiff was within the class of persons the statute was intended to protect, and that his injury was the type of injury the statute was intended to prevent. *See* 842 P.2d at 229 n. 11. We concluded, however, that the negligence per se theory could not be utilized because the legislature had indicated through other legislative enactments that the state was not to be found liable unless the plaintiff proved the state acted unreasonably.[11] Thus, we held that proof of the violation of the fence statute was insufficient to establish negligence.

In the present case, as in *Moldovan,* the legislature has clearly indicated that its creation of a regulatory scheme governing the conduct of oil and gas operators is not intended to abrogate the rule of reasonable surface use and substitute a strict liability standard for violations of the Act and rules issued thereunder. As noted previously, section 34–60–114, 14 C.R.S. (1995), expressly

---

**10.** If a legislative enactment or regulation establishes the standard of care, the effect of a violation is to essentially make a defendant strictly liable for the violation regardless of whether the defendant acted reasonably. *See State v. Moldovan,* 842 P.2d 220, 228 (Colo.1992) (if theory of negligence per se is applied to state's failure to properly maintain right-of-way fence, violation of statute "would conclusively establish negligence irrespective of the reasonableness of the state's conduct in attempting to carry out its statutory responsibility.").

**11.** Specifically, the legislature had provided that a public entity could not be liable for a dangerous condition on a public highway unless "the public entity reasonably knew or should have known of the dangerous condition." *Moldovan,* 842 P.2d at 229. Because the legislature clearly indicated that the state's conduct had to be unreasonable before it could be liable for failing to maintain the right-of-way fence, we held that the plaintiff's claim "must be resolved under general principles of negligence and not negligence per se." *Id.*

preserves a person's right to bring a common law action in damages against a person who has violated a provision of the Act or commission rule. It is well settled under our common law precedent that, absent a contrary provision in the severance instrument or lease, the compensable damage due a surface owner is damage caused by surface use that is negligent or not reasonably necessary to the development of the mineral estate. The legislature's express preservation of a person's right to seek a common law remedy in damages against an operator thus supports the conclusion that the Act was not intended to allow a surface owner to recover damages when an operator violates a commission rule but nevertheless acts in a way that is reasonable and necessary. *See People v. City of Thornton,* 775 P.2d 11, 19 n. 7 (Colo.1989) ("The General Assembly is presumed cognizant of the judicial precedent in a particular area when it enacts legislation in that area.").

 To hold that commission rules establish the standard of care for operators' use of the surface would, unless the rule itself incorporates a reasonableness standard, make an oil and gas operator strictly liable for a rules violation and effectively abolish the long-standing rule of reasonable surface use.[12] In the absence of clear indication that the legislature intended such a result, we decline to treat the Act as effecting "such a fundamental reallocation of the rights of the owners of [the surface and mineral] estates." *Grynberg,* 739 P.2d at 236; *see Canape,* 897 P.2d at 767 (refusing to apply negligence per se to violation of OSHA regulation because statute provided that regulations were not to enlarge, diminish, or affect common law rights, duties, and liabilities).

 When a legislative enactment or regulation does not define the applicable standard of care, it may nonetheless "be relevant evidence bearing on the issue of negligent conduct." *Restatement (Second) of Torts* § 288B (1965). This is particularly true in the case of administrative regulations, whose violation courts commonly regard as

evidence of the applicable standard of care. *See id.* cmt. d. We therefore conclude that violations of commission rules are valid, but not conclusive, evidence that a lessee breached a duty owed to the surface owner. *See Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579, 591–92 (Colo.1984) (holding that, although compliance with administrative safety regulations did not establish due care, it was evidence of due care).

 Because commission rules are only evidence of the applicable standard of care, expert testimony concerning standard industry customs and practices is relevant additional evidence of that standard if the standard is not within the common knowledge and experience of ordinary persons. *See Yampa Valley Elec. Ass'n, Inc., v. Telecky,* 862 P.2d 252, 257 (Colo.1993). The determination as to whether the standard is a matter of common knowledge is committed to the sound discretion of the trial court. *See People v. Fasy,* 829 P.2d 1314, 1317–18 (Colo.1992).

 If a surface owner proves that a lessee has violated a commission rule, the presentation of expert testimony is not a *sine qua non* of liability, however. Because commission rules are evidence of the standard of care, the absence of expert testimony does not leave "the trier of fact ... with no standard at all against which to evaluate the defendant's conduct." *Quintana,* 827 P.2d at 520. If the violation is the proximate cause of injury, the trier of fact is therefore permitted—but not required—to conclude that the lessee's conduct was negligent.

### B.

 With these principles in mind, we now consider whether the trial court correctly determined that Magness was required to present the testimony of an expert in oil and gas operations in order to sustain the negligence claim. We conclude that the trial court erred in finding that Magness's failure to present expert testimony was fatal to this claim.

---

12. We also note that application of the negligence per se theory to commission rules would be the functional equivalent of recognizing a private cause of action under section 34–60–114, 14 C.R.S. (1995). *See Ries v. National R.R. Passenger Corp.,* 960 F.2d 1156, 1164 (3d Cir.1992).

At trial, Magness alleged that Gerrity violated commission rules by failing to remove all plastic, bentonite, and other waste in the water and reserve pits, and by burying such material without Magness's prior, written consent. In addition, Magness alleged that Gerrity failed to give Magness notice before commencing reclamation operations, and neglected to consult with Magness and the local district of the state soil conservation service with respect to the proposed reclamation operations.

At the time Gerrity commenced reclamation operations, rule 315(q) provided, in pertinent part, that

> all the materials and equipment associated with the drilling, reentry or completion operations including but not limited to concrete, sack bentonite, and other drilling mud additives, sand, plastic, pipe, cable, and other waste materials shall be removed.... In addition, material may be burned or buried on the premises only with the prior written consent of the surface owner, and with prior written notice to the surface tenant.

Rule 315(r) provided, in pertinent part:

> The operator shall notify the surface owner and surface tenant not less than seven (7) days before any final site reclamation and restoration is to take place and when it is to occur.... The party responsible for

such reclamation shall consult with the local district of the state soil conservation service, the surface owner and the surface tenant with respect to the proposed reclamation operations including any special aspects thereof.

2 C.C.R. 404–1 (1993).

■■■ These provisions adopt a standard of care that is within the common knowledge and experience of ordinary persons. The question of whether an operator has notified and consulted with the surface owner concerning reclamation operations, and whether the operator has removed or buried materials associated with drilling activity, is not a technical matter requiring evidence of industry practice. Expert testimony was therefore not needed to determine if these provisions were violated. Moreover, because the provisions were valid evidence of the standard of care, noncompliance would have permitted the trier of fact to conclude that Gerrity was negligent.[13]

Because some of the rules provisions that Gerrity allegedly violated included standards of care within the common knowledge and experience of ordinary persons, the trial court erred in failing to decide the question of Gerrity's alleged negligence. These provisions constituted valid evidence of the duty owed by Gerrity, and precluded the necessity

---

13. Although the trial court erred in finding that expert testimony was necessary to sustain Magness's negligence claim, the court correctly determined that Magness's failure to present expert testimony precluded the court from finding that Gerrity violated those rules provisions that included standards of care which were not within the common knowledge and experience of ordinary persons. For example, Magness asserted that Gerrity violated provisions of rules 315(q) and 315(r) which provided that drilling locations and well sites were to be reclaimed and restored as soon as conditions "reasonably permit." Because there was evidence that the pits at the drill sites were frozen for a considerable length of time following completion of drilling and other operations, the question of whether Gerrity restored the sites as soon as conditions reasonably permitted was not a matter within the common knowledge and experience of ordinary persons. Thus, the determination of whether Gerrity violated this rule provision required expert testimony on the applicable standard of care.

Magness also alleged that Gerrity violated the provision of rule 315(r) which provided that

drilling sites were to be restored to their original condition "insofar as is practicable." The determination of whether this provision has been violated is also not normally a matter within the common knowledge and experience of ordinary persons, who lack the technical knowledge needed to determine if an operator has restored a site to its original condition in a reasonable manner under the circumstances. See Black's Law Dictionary 1172 (6th ed. 1990) ("Practicable is ... that which is performable, feasible, possible ...."). (citing Frey v. Security Ins. Co. of Hartford, 331 F.Supp. 140, 143 (W.D.Pa.1971) (" 'Practicable' means feasible in the circumstances. When a policy of insurance requires that notice be given 'as soon as practicable', the law requires that notice be given within a reasonable time ...."), aff'd, 473 F.2d 1031 (3d Cir.1973)). We do not approve of the trial court's statement that this provision was not to be interpreted "literally" and did not require "literal compliance." However, the trial court did not err in finding that Gerrity was required to present expert testimony to prove that this provision was violated.

of expert testimony on that issue. Magness is entitled to a new trial on the negligence claim. We therefore affirm, on different grounds, the court of appeals reversal of the trial court judgment that Magness was required to present expert testimony in support of the negligence claim.

### C.

■ We next consider whether Magness was required to present the testimony of an oil and gas expert in support of the trespass claim. We hold that a claim of trespass does not require the surface owner to present evidence of an applicable standard of care, but rather requires the surface owner to present evidence that the operator's conduct materially interfered with surface uses. Hence, expert testimony is not necessary to the establishment of a prima facie case.

■ The elements of the tort of trespass consist of a physical intrusion upon the property of another without the permission of the person lawfully entitled to the possession of the real estate. *See Burt v. Beautiful Savior Lutheran Church,* 809 P.2d 1064, 1067 (Colo.App.1990). Thus, unlike a negligence claim, a trespass claim does not require a plaintiff to prove the existence of a legal duty and present evidence of an applicable standard of care. When a surface owner claims that an operator trespassed by failing to act in a reasonable and necessary manner while developing mineral rights, the crux of such a claim is that the operator exceeded the scope

of the implied easement of access and thereby infringed upon the surface owner's correlative rights to the surface. As a result, in order to establish a prima facie case of trespass, the surface owner's initial burden is to present evidence that the operator's conduct materially interfered with surface uses.[14] Evidence that the operator's conduct was merely inconvenient to the surface owner is insufficient. A material interference with surface use, for the purpose of establishing a prima facie case, is an interference which is not reasonable from the perspective of the surface owner and considering only the impact on the surface use.

■ To rebut the surface owner's prima facie case, the operator must present evidence, by means of expert testimony or otherwise, that explains why its surface conduct was reasonable and necessary from the perspective of the operator. This burden properly lies with the operator because the operator is in a much better position, from an evidentiary standpoint, to explain the necessity of its conduct and to present evidence that its operations conformed to standard customs and practices in the industry. Assuming the operator presents such evidence, the surface owner would then be permitted to present its own rebuttal evidence that reasonable alternatives were available to the operator at the time of the alleged trespass.[15] Ultimately, it is the province of the trier of fact to balance the competing interests of the operator and surface owner and objectively determine whether, under the circumstances,

14. A surface owner may point to commission rules as evidence of the type of operator conduct raising a reasonable presumption that the operator's surface use materially interfered with surface uses. Under rule 315(q), for example, "[f]inal site reclamation and restoration shall take place as soon as conditions reasonably permit, following the completion of drilling and completion operations...." Clearly, this rule requires an operator to reclaim and restore well sites as soon as possible. Therefore, if the surface owner presents evidence that a substantial period of time elapsed between completion of operations and site restoration, and that the delay adversely affected existing surface uses, a prima facie case of trespass would be established. Once such evidence is introduced, the operator would then be charged with presenting evidence that circumstances made any delay both necessary and reasonable.

15. Undoubtedly, such evidence would often be presented in the form of expert testimony since it would focus on alternative methods available in the industry which could have been used by the operator and which would have resulted in less interference with the surface owner's existing uses. *See Getty Oil,* 470 S.W.2d at 622 (expert testimony utilized by surface owner to show that operator could have installed pumping units that would not have interfered with surface owner's existing automatic sprinkler system). It should be emphasized, however, that a surface owner is not required to present expert testimony in order to establish a prima facie case and submit the issue to the trier of fact. Consequently, a surface owner's failure to present expert testimony does not relieve the trier of fact of the responsibility of deciding the ultimate question of whether the operator's conduct was reasonable and necessary.

the operator's surface use was both reasonable and necessary.

█ Testimony by an expert in the oil and gas industry is not required in order to establish a prima facie case of trespass, since the focus is on the uses of the surface and the ways in which the operator is materially interfering with those uses. Of course, if the mineral rights holder rebuts the surface owner's prima facie case, and the surface owner fails to present evidence of reasonable alternatives, this is a factor the trier of fact may consider in determining if the holder's conduct was reasonable and necessary.

We conclude that the trial court erred in refusing to consider, based on Magness's failure to present expert testimony, whether Gerrity committed a trespass. Thus, Magness is entitled to a new trial on the trespass claim. Although the court of appeals also erred in holding that the tort of trespass does not require an assessment of the reasonableness of the operator's use of the surface, we nevertheless affirm the court's reversal of the trial court judgment.

### D.

█ We have not previously addressed the distinction, in the context of oil and gas operations, between a cause of action sounding in trespass as opposed to a cause of action sounding in negligence. Specifically, our precedent in this area has not made clear that trespass and negligence are disparate causes of action that implicate distinct evidentiary burdens on the parties. Basic fairness may require that a new trial be granted on a legal issue when an appellate decision sets forth new standards for resolving that issue. *See Public Serv. Co. v. Blue River Irrigation Co.*, 782 P.2d 792, 794 (Colo.1989). Here, the trial court failed to consider the entire trespass claim because it mistakenly believed that expert testimony was required. Moreover, the trial court failed to consider portions of the negligence claim for which commission rules evidenced the standard of care. Under these circumstances, basic fairness dictates that a new trial be granted. We therefore affirm the court of appeals judgment remanding the case for a new trial on the trespass and negligence claims.

### V.

Finally, we consider whether the court of appeals correctly held that a new trial should be granted on the issue of alleged damages incurred by Magness. The court of appeals held that a new trial should be granted on all issues because the trial court relied on an erroneous legal basis for determining the liability issues and "[b]ecause the trial court's conclusions regarding damages were inextricably related to its findings on the issue of liability." *Gerrity*, 923 P.2d at 266. We affirm.

█ C.R.C.P. 59 authorizes a court to "[o]rder a new trial of all or part of the issues" when a ground, such as error in law, exists for a new trial. *See* C.R.C.P. 59(c)–(d). Whenever a new trial must be held on one issue, a new trial must also be held with respect to other issues unless "the issue to be retried is entirely distinct and separable from the other issues involved in the case and ... a partial retrial can be had without injustice to any party." *Bassett v. O'Dell*, 178 Colo. 425, 427, 498 P.2d 1134, 1135 (1972). For example, a partial retrial may be held solely on the issue of damages when liability has been clearly established. *See Marks v. District Court*, 643 P.2d 741, 744 (Colo.1982). Whenever the question arises as to whether a complete retrial is necessary, "'[t]he determinative considerations are those factors relating to fairness. The focus is on the relationship between the issues under the evidence and the practical logistics of retrial.'" *Id.* (quoting *Kitto v. Gilbert*, 39 Colo.App. 374, 386, 570 P.2d 544, 553 (1977)).

█ Although it found that Gerrity was not liable for negligence or trespass, the trial court found, in the alternative, that Magness incurred no damage due to the size of the pits, the delay in commencing restoration and reclamation activities, and any failure to restore drilling locations to their original condition insofar as practicable. The trial court offered no reasons for its determination that no damages resulted from Gerrity's activities, apparently because these findings were unnecessary to the final judgment. Never-

theless, this total lack of explanation frustrates our ability to consider the issue on appeal. *See Weld County Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1316 (Colo.1986) (when considering alleged damage to real property, "the trial court must articulate the reasons for its decision so as to facilitate effective appellate review."). We therefore agree with the court of appeals that the trial court judgment on this issue must be reversed.

■ We also agree with the court of appeals that, under the circumstances of the case, both the liability and the damages issues should be retried. Clearly, the issues of liability and damages are inextricably interwoven in the present case because evidence of "damage" to the surface may also constitute evidence of operator use that is inconsistent with the surface owner's correlative rights. Thus, the granting of a retrial on the trespass issue effectively allows the surface owner to present new evidence as to damages, regardless of whether the purpose of the new trial is to consider liability alone. It would make little sense to allow the trial court to consider such evidence with respect to liability, but prohibit it from considering such evidence on the question of damages. *See Bassett*, 178 Colo. at 428, 498 P.2d at 1135 (fact that many of the witnesses who testified as to liability also testified as to the injuries sustained militated in favor of retrying both liability and damages).

As a practical matter, we also note that if a partial retrial is held on liability alone, the trial court would be forced to rely on what has become a "cold" record for making its findings as to damages. Although this factor is not determinative, it becomes more important when the first and second trials are separated by a significant period of time. *See* 9 James W. Moore, *Moore's Federal Practice* § 52.12[1] (3d ed.1997) (analyzing federal version of C.R.C.P. 59). In the present case, over three years will have elapsed between the time of the original trial and the time of the second trial. Unquestionably, this length of time is significant, and argues in favor of retrying the damages issue.

Under these circumstances, we conclude that the trial court must retry both the liabil-ity and damages issues. We therefore affirm the court of appeals judgment granting a new trial on all issues.

## VI.

We conclude that section 34–60–114 does not create a private cause of action for those damaged by another's violation of the Act or commission rule. In addition, we conclude that a trespass claim based on alleged excessive surface use requires the trier of fact to consider whether the operator's conduct was reasonable and necessary to the development of the mineral estate.

In determining if a surface owner must present the testimony of an expert in the oil and gas industry, we hold that a court must first identify the particular cause of action alleged by the surface owner. If the surface owner alleges that the operator committed negligent acts on the surface, the surface owner must present expert testimony when the applicable standard of care is outside the common knowledge and experience of ordinary persons. Thus, where a statute or commission rule—which we hold to constitute only evidence of the applicable standard of care—includes a standard of care outside the common knowledge and experience of ordinary persons, expert testimony is necessary, but not otherwise.

If a surface owner alleges that an operator committed a trespass by violating the rule of reasonable and necessary surface use, the surface owner is not required to present the testimony of an expert in the oil and gas industry in order to have the claim considered by the trier of fact. A prima facie case of trespass is established when the surface owner presents evidence that the operator's conduct materially interferes with surface uses. Therefore, expert testimony is not a prerequisite to operator liability for trespass.

Because we now clarify standards governing alleged surface injury in trespass and in negligence, we affirm, on different grounds, the court of appeals' grant of a new trial on the question of Gerrity's liability. We also determine that, under the circumstances, a new trial on the damages issue is also warranted. We therefore affirm in part and

reverse in part, and return the case to the court of appeals with directions to remand the case to the trial court for a new trial, consistent with this opinion, on all issues.

VOLLACK, C.J., concurs in part and dissents in part.

BENDER, J., does not participate.

Chief Justice VOLLACK concurring in part and dissenting in part:

I concur with the majority's holding that section 34–60–114, 14 C.R.S. (1995), does not authorize a private cause of action for the violation of a rule promulgated by the Oil and Gas Conservation Commission (Commission). The majority also sufficiently clarifies evidentiary burdens for surface estate owners asserting negligence or trespass claims against the developers of a mineral estate. However, I disagree with the majority that a new trial is warranted in the present case given the trial court's wholesale rejection of the surface owner's claims against the developer of the mineral estate. Accordingly, I dissent to that part of the majority opinion which grants the surface owner a new trial.

I.

This dispute arises out of the drilling of oil wells on property subject to a severed mineral estate. Gerrity Oil and Gas Corporation (Gerrity) owned a mineral estate, which gave it the right to enter a surface estate owned by Bob Magness (Magness) in order to develop its mineral interest. In October of 1992, Gerrity notified Magness that it intended to drill four wells on Magness' property. Negotiations between the parties led Gerrity to change the proposed locations of each of the four wells to accommodate Magness. After drilling one well, Gerrity received word from Magness that it could not develop additional drilling sites without Magness' express authorization.

As a result of Magness' communications, Gerrity was forced to seek the issuance of a temporary restraining order and a preliminary injunction in Weld County District Court (the trial court). The trial court granted Gerrity's motion and issued a preliminary injunction enjoining Magness from restricting Gerrity's access to the property. Gerrity subsequently filed a motion to convert the preliminary injunction into a permanent injunction. Magness counterclaimed, asserting negligence and trespass claims against Gerrity as well as a claim for declaratory relief.

At the trial, Gerrity presented evidence detailing its operations on the property. Magness, in support of his negligence and trespass claims, offered the testimony of witnesses who had little, if any, specialized knowledge of the proper manner in which oil drilling operations are conducted. Largely as a result of Magness' failure to present the testimony of someone knowledgeable in the field of oil and gas operations, the trial found that Magness presented insufficient evidence to establish that Gerrity was negligent in conducting its operations or had committed a trespass on Magness' property.

II.

When the trial court sits as the finder of fact, the credibility of the witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom are all within the province of the trial court and will not be disturbed on review unless they are manifestly erroneous. *See Broncucia v. McGee,* 173 Colo. 22, 25, 475 P.2d 336, 337 (1970). The record in this case indicates that the trial court, sitting as the finder of fact, determined that Magness presented insufficient evidence to support his negligence and trespass claims. Although the trial court highlighted Magness' failure to present expert testimony as the major flaw in his case, its ruling demonstrates that it rejected Magness' claims after considering "all the facts and circumstances," including whether Gerrity "conducted its operation in an unreasonable or negligent manner."

Specifically, the trial court found that Gerrity "was quite conciliatory and acquiesced in many of the suggestions made by [Magness] with respect to the location of the well sites" despite the fact that Magness made unreasonable site demands and attempted to limit Gerrity's access to the prop-

erty. Furthermore, the trial court found in three instances that Magness failed to prove damages stemming from alleged violations of Commission rules. Finally, the trial court found that Gerrity's witnesses provided "the most reliable and trustworthy" testimony concerning Gerrity's reclamation work. These findings, in addition to Magness' failure to present expert testimony, support the trial court's conclusion that Magness failed to present sufficient evidence in support of his negligence and trespass claims. In my view, the conclusions drawn by the trial court in evaluating the sufficiency of the evidence before it were not manifestly erroneous and are entitled to substantial deference.

Nevertheless, the majority relies upon the absence of a trial court finding concerning Magness' claim that Gerrity violated certain provisions contained in Commission rules. See Rule 317(q)–(r), 2 C.C.R. 404–1 (1993). The majority characterizes these absent findings as errors which, in light of its clarification of the relative evidentiary burdens in negligence and trespass actions, warrant a new trial. While the trial court did not expressly address each provision within the rules, it did reject Magness' arguments that Gerrity violated other provisions within these same rules. In my view, the trial court's complete rejection of Magness' trespass and negligence claims and its refusal to find a violation of Commission rules made detailed findings on multiple provisions within the rules unnecessary.[1]

The majority also concludes that a new trial is necessary because the trial court erred in rejecting Magness' trespass claim for his failure to present expert testimony. In my view, the trial court's conclusions regarding the lack of expert testimony should not be read in isolation. The trial court expressly determined that Gerrity's use of the surface estate was reasonable "under all the facts and circumstances." This finding mirrors the majority's statement that the ultimate question in evaluating trespass claims requires that the trier of fact "balance the competing interests of the operator and surface owner and determine whether, under the circumstances, the operator's surface use was reasonable and necessary." Maj. op. at 933. The record therefore indicates that the trial court applied the proper legal standard in rejecting Magness' trespass claim.

Contrary to the majority, I believe that "basic fairness" warrants against granting a new trial in this case. By clarifying the relative evidentiary burdens in negligence and trespass actions, the majority has done nothing to alter or change the substantive law upon which Magness' claims are based. See Public Serv. Co. v. Blue River Irrigation Co., 782 P.2d 792, 794 (Colo.1989). Rather, the contested issues in this case concern two areas of the law, negligence and trespass, that have been settled for some time. Without changing the playing field upon which litigants have previously relied, a new trial essentially punishes Gerrity for successfully pleading its case while forgiving Magness' failure to present sufficient evidence in support of his claims. Magness' general evidentiary burden in proving his negligence and trespass claims was clear from the outset. He should not be rewarded for failing to meet this burden merely because the majority has clarified it somewhat.

### III.

The trial court's ruling that Magness presented insufficient evidence in support of his negligence and trespass claims should be accorded its proper deference. Although the trial court did not specifically address whether Gerrity violated certain provisions contained in Commission rules, these oversights do not affect the basic thrust of the trial court's ruling. Furthermore, the trial court applied the proper standard in rejecting Magness' trespass claim. Granting Magness a new trial, in effect, gives him a second chance at proving his case, complete with instructions on how to do so. Such a result is unfair to Gerrity and represents an ineffi-

---

1. Even assuming that the absence of such explicit findings was error, remand is the proper means for correcting such a minor oversight. Remand would ensure that the issues are determined on the facts as they were presented at trial. A new trial would then be warranted only if the trial court determined that these particular provisions were violated and that the violations had an effect on the overall strength of Magness' negligence and trespass claims.

cient use of judicial resources. Accordingly, I·dissent to that part of the majority opinion which grants Magness a new trial.