JUSTICE GABRIEL, concurring. ¶ 44 I join the majority’s opinion in full. I write separately, however, to explain why I believe that the conclusion that the law dictates with respect to section 16-3-401(2), C.R.S. (2017), may lead to unfair results and thus cries out for legislative clarification. I. Analysis ¶ 45 The principal issue in this case boils down to this: when Arvada brought a person in its custody to Denver Health for treatment and Denver Health provided such treatment, does section, 16-3-401(2) require Arvada to pay for the cost of that treatment, or should Denver Health, and ultimately Denver taxpayers, bear this epst? ¶ 46 In my view, the intuitive answer to this question is clear: Arvada, as the party that requested the treatment, should pay, just like it must pay for the adequate food and shelter that section 16-3-401(2) requires it to provide to persons who are arrested or in its custody. I do not believe that anyone disputes that Arvada would be required to pay for medical treatment if that treatment were provided to a person in custody in an Arvada institution. I see no reason, why the result should be different were Arvada to transport the same person to Denver Health for treatment. The person remains in Arva-da’s custody, and the statutory duty to provide treatment remains the-same. See § 16-3-401(2). Indeed, concluding that Denver Health must bear the costs in such a scenario creates a perverse incentive for cities having custody over persons in need of treatment to transport such persons to.Denver Health in order to avoid incurring the costs. Such a result .makes little sense to me, and it seems particularly unjust to Denver taxpayers, who could end up bearing costs that should rightly be borne by the taxpayers of. the cities holding the pei’sons in need of treatment. ¶47 Nonetheless, under existing law, I cannot conclude that section 16-3-401(2) evinces a clear legislative, intent to allow Denver Health to assert a statutory claim for the costs at issue. ¶ 48 We have long held that we will not infer a private right of action based on a statutory violation unless we discern a clear legislative intent to create such a cause of action. See, e.g„ Gerrity Qil & Gas Corp. v. Magness, 946 P.2d 913, 923 (Colo. 1997); Bd. of Cty. Comm’rs v. Moreland, 764 P.2d 812, 817 (Colo. 1988); Quintario v. Indus. Comm’n, 178 Colo. 131, 496 P.2d 1137, 1139 (1972). ¶ 49 Here, I cannot say that section 16-3-401(2) evinces the requisite clear legislative intent to'recognize a statutory cause of action. This is particularly true given that section 16-3-401(2) itself expressly provides for the assessment of costs to the person receiving treatment. See § 16-8-401(2) (“Anyone receiving medical treatment while held in custody may be assessed a medical treatment charge as provided in section 17-26-104.6, C.R.S.”); see also § 17-26-104.6(3), C.R.S. (2017) (“When a person is-held in custody in a county jail, the person shall be primarily responsible for the - payment of the cost of medical care provided to the person for a self-inflicted injury or a condition that was preexisting prior to the person’s arrest and shall be charged for the medical care by the provider of care.”). ¶ 60 The fact that in section 16-3-401(2), the General Assembly assessed certain costs to persons receiving treatment shows that the legislature knew how to ajlocate the burden of payment when it intended to do so. In these circumstances, I cannot read into section 16-3-401(2) a clear legislative intent to require Arvada to bear the costs in the scenario presented in this case. ¶ 61 In reaching this conclusion, I am unpersuaded by Denver Health’s assertion that cases like Gerrity Oil, Moreland, and Quintar no are distinguishable because they concerned breaches of statutory duties whereas in the present case, Denver |Iealth assisted Arvada in complying with its statutory duty. Although I acknowledge this distinction, I do not 'believe that our case law regarding implied statutory rights of action has drawn so fíne a line. In any event, the question of whether we may infer from a statute a private right of action must turn on the legislature’s intent, and here, it is what I perceive to be á lack of clarity as to the legislature’s intent that compels me to concur in the majority’s decision. II., Conclusion ¶ 62 For the foregoing reasons, I believe that settled law requires me to conclude that section 16-3-401(2) does not support Denver Health’s statutory claim to recover the costs of services that it provided to Mr. Ross. It is not clear to me, however, that this is the legislature’s'intended result, particularly given the inequitable outcomes that could flow from such a conclusion. ¶ 63 Accordingly, although I join in the majority’s opinion, I echo the sentiments expressed by Judge Vogt in her special concurrence below that the issues in this case cry out for resolution by the General Assembly. Denver Health & Hosp. Auth. v. City of Arvada ex rel. Arvada Police Dep’t, 2016 COA 12, ¶ 60, — P.3d, -, - (Vogt, J., specially concurring). I hope it will take up the mantle. .